UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALBERT M. ROBINSON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-11-649 |
| | § | |
| JACK HUSTON CASTLE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs sue, on various theories, for harm they allegedly suffered as a consequence of dental services they received. Pending before the Court are: (1) two Motions for Partial Summary Judgment filed by Plaintiffs Albert and Anita Robinson (Doc. Nos. 54 and 57); (2) the Motion to Dismiss filed by Defendants the New Jersey Judiciary, the Mercer-Vincinage Family Division, Ms. Sue Regan, Ms. Sandra L. Terry, and Mr. Doug Meckel (collectively the "New Jersey Defendants") (Doc. No. 35); (3) the Motion to Dismiss filed by Defendants Dr. Kent Ziegenbein and Dr. Larry Earl Freeman (Doc. No. 61); (4) two Motions to Dismiss filed by Defendants Mr. Jack Huston Castle and Dentist Choice 1 L.P. (Doc. Nos. 31 and 62); and (5) the Motion to Declare Plaintiffs Vexatious Litigants filed by Defendants Ziegenbein and Freeman (Doc. No. 30).

After considering all of the parties' Motions, the responses thereto, and the applicable law, the Court finds that the New Jersey Defendants' Motion to Dismiss (Doc. No. 35) must be granted; that Defendants Ziegenbein and Freeman's Motion to Dismiss (Doc. No. 61) must be granted; that Defendants Castle and Dentist Choice 1 L.P.'s Motions to Dismiss (Doc. Nos. 31 and 62) must be granted; that Defendants Ziegenbein

and Freeman's Motion to Declare Plaintiffs Vexatious Litigants (Doc. No. 30) must be denied; and that all other pending Motions must be denied as moot.

## I.      BACKGROUND

Plaintiffs Albert and Anita Robinson filed their "First Amended Original Petition" (hereinafter "Amended Complaint") naming as Defendants Jack Huston Castle, Dr. Larry Freeman, Dr. Kent Ziegenbein, Dentist Choice 1 L.P. ("Dentist Choice"), Dr. Bahman Safari, Texas Dental Associates P.A.1 ("Texas Dental"), the New Jersey Judiciary, the Mercer-Vincinage Family Division (pled as "Mercer County Domestic Violence Team"), Sandra L. Terry, Doug Meckel, and Sue Regan.[1] (Doc. No. 55.) For purposes of the motions to dismiss, the Court accepts the following factual allegations in Plaintiffs' complaint as true. *Frame v. City of Arlington*, 575 F.3d 432, 434 (5th Cir. 2009).

Plaintiffs Albert and Anita Robinson are a married couple currently residing in Florida. (Pl. Am. Compl. ¶ 6-7.) At an unspecified point in time, Defendant Jack Huston Castle formed the Texas Dental and Dentist Choice companies, both of which operated under the name "Lovett Dental." (*Id*. ¶ 24.) Defendant Castle is not a dentist. (*Id*.) After forming Lovett Dental, Castle entered into an agreement with Defendant Ziegenbein under which Ziegenbein assumed an ownership interest in Texas Dental and Dentist Choice and worked as a dentist at both. (*Id.*) Castle owned all of the dental equipment, leased the office space, managed the patient records, hired office staff, and directed Defendant Ziegenbein. (*Id.* ¶ 25.) Defendant Ziegenbein paid Castle a portion of the monthly revenue generated by Lovett Dental. (*Id.*) According to Plaintiffs, "operat[ing] a dental service without a license issued by the Texas State Board of Dental Examiners

---

[1] Defendants Texas State Board of Dental Examiners and Sherri Meek were dismissed from this case on May 23, 2011.

(TSBDE)…was the main goal of Defendant Castle and Defendant Ziegenbein's illegal scheme." (*Id.* ¶ 26.)

Between 2005 and 2007, Plaintiffs Albert and Anita Robinson obtained dental services from Lovett Dental after seeing advertisements for Lovett Dental in the telephone book. (*Id.* ¶ 49.) These advertisements stated that Dentist Choice "was a dental service provider that was licensed and regulated by the state of Texas." (*Id.*) Defendant Safari performed an "inadequate root canal" on Mr. Robinson, which had to be redone. (*Id.* ¶ 50.) Mr. Robinson still suffers from the pain of the root canal. (*Id.*) Defendant Freeman performed an "inadequate root canal" on Mrs. Robinson, as a result of which she has had to seek "additional and ongoing dental services." (*Id.* ¶ 149.)

Plaintiffs filed suit against some or all Defendants in the 151st District Court for Harris County. (*Id.* ¶ 33.) During the litigation, Defendants Freeman and Ziegenbein's attorneys produced what the Plaintiffs claim were altered medical records of Plaintiff Mrs. Robinson. (*Id.* ¶ 51.) The attorneys also improperly combined attorneys' fees for Defendants Freeman and Ziegenbein, charging fees for Defendant Freeman before he was a party to the suit. (*Id.* ¶¶ 34-39.) Defendants Freeman and Ziegenbein were awarded these improperly-combined attorneys' fees in State Court (*Id.* ¶ 33), but that order was later vacated. (*Id.* ¶ 55.) Although the fees known by Plaintiffs to be improper were ultimately removed, Plaintiffs were not given an opportunity to prove or seek discovery as to the invalidity of other aspects of the remaining fees. (*Id.*)

During the litigation, Mr. Robinson received a phone call from Dentist Choice's attorney demanding $10,000, and stating that if the money was not provided, the attorney

would tell the State Court of Mr. Robinson's prior arrest in New Jersey and Mr. Robinson's other litigation. (*Id.* ¶¶ 55-56.)

In December 2008, Defendant Castle conspired with Defendants Meckel and Terry (employees of the Mercer-Vincinage Family Division in New Jersey) to have a fraudulent restraining order issued against Mr. Robinson for an incident that allegedly took place in New Jersey in 1990. (*Id.* ¶ 41.) This Temporary Restraining Order (TRO) was "entered into the National Registry" in 2008, and faxed to Mr. Robinson in Texas in September of 2009. (*Id.* ¶ 41.) Mr. Robinson attempted to purchase a gun in Florida in September 2009, but the vendor refused because of the outstanding TRO. (*Id.* ¶ 43.) The TRO affected Mr. Robinson's business such that he could not "work on, test, transport, modify, inspect, touch, develop, or sell [his] shotgun system." (*Id.* ¶ 61.) Mr. Robinson believes that the envelope in which the TRO was sent did not look to be 20 years old, but rather "it looked as if it was just manufactured and placed into the file recently." (*Id.* ¶ 47.)

## II.   NEW JERSEY DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendants the New Jersey Judiciary, the Mercer-Vincinage Family Divison, Sue Regan, Sandra L. Terry, and Douglas Meckel ("New Jersey Defendants") file this Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

### A.   Legal Standard

This court must dismiss a case when the plaintiff fails to establish personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Absent a rule or statute to the contrary, ... a federal court [may] exercise jurisdiction over only those defendants who are subject to the

jurisdiction of courts of the state in which the court sits." *Point Landing, Inc. v. Omni Capital International, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986), *aff'd sub nom. Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987). A non-resident defendant is subject to personal jurisdiction in the United States District Court for the Southern District of Texas if two criteria are met: (1) the non-resident defendant must be amenable to service of process under Texas' long arm statute, and (2) the exercise of personal jurisdiction must be consistent with due process. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000). Because the Texas long-arm statute, codified in the Texas Civil Practice and Remedies Code at §§ 17.041 to 17.045, is coterminous with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court's constitutional due process inquiry addresses both prongs of the due process analysis. *Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d 90, 93-94 (5th Cir. 1992).

To comport with constitutional due process, a plaintiff must show: (1) that the defendant purposefully availed herself of the benefits and protections of Texas law, thereby establishing "minimum contacts" with Texas such that the defendant could reasonably have anticipated being haled into court there; and (2) that, under the circumstances, the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 94 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); and *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990)).

The minimum contacts requirement can be met through contacts sufficient to confer either general or specific jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp.*

*Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). A court may exercise general jurisdiction when a defendant's contacts with the forum state are substantial, continuous, and systematic, even though unrelated to the litigation. *Id.* Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (citation omitted).

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)  While the plaintiff bears the burden of proving that jurisdiction exists, he or she need only present a *prima facie* showing, and need not establish jurisdiction by a preponderance of the evidence. *Love N' Care, Ltd. v. InstaMix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

**B.     Analysis**

As against the New Jersey Defendants, Plaintiffs Mr. and Mrs. Robinson have alleged violations of the Second Amendment to the U.S. Constitution; violations of 18 U.S.C. §§ 1951, 1962, and 1343; violations of 42 U.S.C. § 1983; and common law conspiracy and defamation claims. (Doc. No. 55.) The New Jersey Defendants have moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

It is difficult to locate any facts in Plaintiffs' Amended Complaint that tie the New Jersey Defendants to this forum in any meaningful way so as to give rise to either general

or specific jurisdiction.[2] The two apparent connections between the New Jersey Defendants and the Texas forum are that the New Jersey Defendants (1) received returned mail which indicated that Mr. Robinson had moved to Texas, (Pl. Am. Compl. ¶ 47), and (2) faxed a copy of the Temporary Restraining Order ("TRO") to Texas after Mr. Robinson asked them to do so. (*Id.* ¶ 41; Doc. No. 35, at 2.) The Plaintiffs plead no other facts to suggest that anything could have given the New Jersey Defendants reason to believe they might be haled into court in Texas. The one affirmative act that these Defendants took in relation to Texas—faxing the TRO to Plaintiff Mr. Robinson—was taken only at Mr. Robinson's request. (*Id.*) The contacts alleged by Plaintiffs are not substantial or continuous enough to establish general jurisdiction, nor were they purposely directed at the forum so as to give rise to specific jurisdiction. The New Jersey Defendants' Motion to Dismiss for lack of personal jurisdiction must therefore be GRANTED.

### III.    DEFENDANTS FREEMAN AND ZIEGENBEIN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### A. Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's

---

[2] The Plaintiffs have asserted that this Court has personal jurisdiction over the New Jersey Defendants because the New Jersey Defendants waived service. (Pl. Am. Compl. ¶ 3.) It appears that the Plaintiffs believe that the New Jersey Defendants' "Waiver of Service" pursuant to Federal Rule of Civil Procedure 4(d) was sufficient to waive objections to personal jurisdiction. However, the language of Rule 4(d) itself makes clear that waiver of service of a summons "does not waive any objection to personal jurisdiction or venue." FED. R. CIV. P. 4(d)(5). The New Jersey Defendants therefore have not waived objections to personal jurisdiction.

grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must contain sufficient factual matter that, if it were accepted as true, would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim need not give rise to "probability," but need only plead sufficient facts to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A pleading also need not contain detailed factual allegations, but go beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

While the court must accept well-pleaded facts as true, *Iqbal*, 129 S. Ct. at 1950, it should neither "strain to find inferences favorable to the plaintiffs" nor "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). The court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### B. Analysis

The number of claims asserted in this suit and the disjointed design of Plaintiffs' Amended Complaint make it difficult to discern which claims are asserted against which Defendants. It appears that as against Defendants Ziegenbein and Freeman, Plaintiffs

assert claims for violations of 18 U.S.C. § 1962 (the Racketeer Influenced and Corrupt Organizations Act, or "RICO"); violations of 42 U.S.C. 1983; violations of 18 U.S.C. 873; and medical malpractice.

### 1.   Claims Under 18 U.S.C. § 1962 (RICO Claims)

RICO provides for civil liability for activities in violation of 18 U.S.C. § 1962. In order successfully to bring an action under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *see also Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). Defendants Ziegenbein and Freeman contend that Plaintiffs have failed adequately to allege the necessary elements of a RICO claim and that, even if sufficient facts had been pleaded to support a claim under RICO, Plaintiffs would not have standing to assert a RICO claim.

The threshold requirement for stating a civil cause of action under RICO is that that the plaintiff must be "'injured in his business or property by reason of a violation' of the [RICO]'s substantive restrictions." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (quoting 18 U.S.C. § 1964(c)); *see also Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001). Thus, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation." It is well-settled that injury to business or property for the purpose of asserting a RICO claim excludes personal injuries. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 422 (5th Cir. 2001); *Borskey v. Medtronics*, 105 F.3d 651, 651 (5th Cir. 1996) (upholding the district court's rejection of a RICO action on the grounds that RICO has no applicability to an action for damages from personal injuries).

Pecuniary consequences that arise from personal injuries are likewise not compensable claims under RICO. *See, e.g.*, *Fisher v. Halliburton*, 2009 WL 5170280 at *5 (S.D. Tex. Dec. 17, 2009) (holding that plaintiffs' alleged loss of "continued compensation" directly resulted from their personal injuries, and was thus not a cognizable injury under RICO); *Gaines v. Tex. Tech Univ.*, 965 F.Supp. 886, 890 (N.D. Tex. 1996) (holding that the impairment of future earning capacity as a result of a personal injury is not recoverable under RICO); *Borskey v. Medtronics, Inc*., 1995 WL 120098, at *3 (E.D. La. Mar. 15, 1995) (holding that plaintiffs' medical expenses were so closely tied to their alleged personal injuries that such expenses could not be covered under RICO).

In the present case, Plaintiffs' alleged damages include (1) "physical pain in the past and future," (2) "mental anguish in the past and future," (3) "disfigurement in the past and future," (4) "medical expenses in the past and future," (5) "loss of earning capacity in the past and future," and (6) "loss of consortium in the past and future." (Pl. Am. Compl. ¶ 103.) These alleged damages are limited to personal injuries and injuries arising out of personal injuries.  Because personal injuries and their resulting pecuniary consequences are not an "injury to business or property" under § 1964(c), Plaintiffs' alleged injuries do not confer standing to bring a civil claim under RICO.

Because Plaintiffs do not have standing to bring claims against Defendants Ziegenbein and Freeman under RICO, Plaintiffs have failed to state a claim under 18 U.S.C. § 1962 upon which relief can be granted.

### 2.   Claims Under 42 U.S.C. § 1983

Plaintiffs claim that Defendants Ziegenbein and Freeman attempted to evade a medical malpractice suit in State Court by stating that their business was not a medical service provider, and then reversed course to argue that it was a medical service provider when such an argument would help them on the issue of attorney's fees. (Pl. Am. Compl. ¶ 88.) According to Plaintiffs, this change in course was ultimately denied by the State Court. (Pl. Am. Compl. ¶ 54.)

Notwithstanding the questionable litigation tactics allegedly employed by these Defendants, the facts as pleaded in Plaintiffs' Amended Complaint do not give rise to a claim under 42 U.S.C. § 1983. Section 1983 creates a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of law. 42 U.S.C. § 1983. Defendants Ziegenbein and Freeman, as private health care providers, were not acting under color of law. Plaintiffs therefore have failed to state a claim under 42 U.S.C. § 1983 for which relief can be granted.

### 3. Claims Under 18 U.S.C. § 873

Plaintiffs also assert a claim under 18 U.S.C. § 873, the portion of the United States Code dealing with criminal blackmail. This portion of the United States Code does not give rise to civil claims for damages, and Plaintiffs therefore cannot state a claim upon which relief can be granted under this Section.

### 4. Medical Malpractice Claims

Defendants Ziegenbein and Freeman move to dismiss Plaintiffs' medical malpractice claims on the basis that Plaintiffs have failed to state a claim for relief for medical malpractice under Chapter 74 of the Texas Civil Practice and Remedies Code.

The essential elements of a claim for medical malpractice include: (1) a physician's duty to act according to a certain standard of care; (2) breach of that standard of care; (3) an injury to the plaintiff; and (4) a causal connection between the breach of care and the injury. *Grider v. O'Brien*, 260 S.W.3d 49, 57 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *see also Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

Even accepting all of Plaintiffs' well-pleaded facts as true, Plaintiffs' allegations are insufficient to state a claim for medical malpractice against Dr. Freeman. Plaintiffs allege that Defendant Freeman "took out his personal anger" on Plaintiff Mrs. Robinson. (Pl. Am. Compl. ¶ 153.) Plaintiffs' complaint further alleges that Defendant Freeman "failed to consult a specialist" and failed to "keep adequate records," "monitor plaintiff's condition," or "perform an adequate" root canal. (*Id.* ¶ 148.) Plaintiffs ultimately conclude that "Defendant Freeman's breach of duty proximately caused injury to [Mrs. Robinson]." (*Id.* ¶ 151.) Even if these facts would be sufficient to allege breach, they are insufficient on the issue of causation. The assertion that Freeman's breach of duty proximately caused Mrs. Robinson's injury is a legal conclusion, unsupported by any facts.

With regard to Defendant Ziegenbein, there is nothing in the complaint that goes to the issue of causation at all. The Plaintiffs offer no connection between Defendant Ziegenbein's alleged breach (and with regard to Defendant Ziegenbein it is not entirely clear what the breach might be) and Mr. Robinson's resulting injuries. Absent any facts

supporting causation, Plaintiffs have failed to state a medical malpractice claim upon which relief can be granted.[3]

Because Plaintiffs' Amended Complaint fails to state any claim against Defendants Ziegenbein and Freeman on which relief can be granted, Defendants Ziegenbein and Freeman's Motion to Dismiss must be GRANTED.

## IV.   DEFENDANTS JACK HUSTON CASTLE AND DENTIST CHOICE 1 L.P.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  Legal Standard

The legal standard for deciding whether to grant Defendant Castle's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted under Federal Rule of Civil Procedure 12(b)(6) is the same standard employed above with regard to Defendants Ziegenbein and Freeman's Motion to Dismiss for Failure to State a Claim.

### B.  Analysis

#### 1.  RICO Claims

Plaintiffs assert civil RICO claims against Mr. Castle and the New Jersey Defendants based upon their conspiracy "to cause a fraudulent Restraining Order to issue against [Mr. Robinson]." (Pl. Am. Compl. ¶ 41.)[4] RICO provides for civil liability for

---

[3] Defendants also assert that Plaintiffs' medical malpractice claims must be dismissed because Plaintiffs fail to plead facts to show that the suit was filed within the applicable statute of limitations. (Doc. No. 18, at 16.) A motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise a statute of limitations defense if the defense clearly appears on the face of the complaint. *Washington v. City of Gulfport, Miss.*, 351 F. App'x 916, 918 (5th Cir. 2009). The statute of limitations for medical malpractice claims requires that such claims be filed within two years of the alleged violation. TEX. CIV. PRAC. REM. CODE § 74.251. Putting aside the issue of the pleading burden, it appears from the face of Plaintiffs' complaint that the medical malpractice claim was not brought within the applicable statute of limitations. Plaintiffs' injuries took place between 2005 and 2007. (Pl. Am. Compl. ¶ 49.) Their first complaint was not filed until February 15, 2011. (Doc. No. 1.) Thus, accepting the facts in Plaintiffs' Amended Complaint as true, the medical malpractice claim at issue was not brought within the relevant statute of limitations.

[4] As discussed above, these claims are dismissed with regard to the New Jersey Defendants based upon this court's lack of personal jurisdiction.

activities undertaken in violation of 18 U.S.C. § 1962. As discussed above, to successfully bring an action under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). The standing issues that were dispositive as to Plaintiffs' RICO claims against Defendants Ziegenbein and Freeman are absent here, as Plaintiffs allege injuries unrelated to personal injuries, and based instead upon the impact of the TRO on Mr. Robinson's ability to "work on, test, transport, modify, inspect, touch, develop, or sell" a number of firearms or firearm related systems. (Pl. Am. Compl. ¶¶ 60-86.)

Instead, Defendants argue that Plaintiffs have not adequately alleged two or more acts of racketeering as required by 18 U.S.C. § 1961(5). *See In re MasterCard Intern. Inc.*, 313 F.3d 257, 261 (5th Cir. 2002) ("A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity."). Such predicate acts are limited to those described in 18 U.S.C. § 1961(1), including acts that are indictable under any of the statutes enumerated in that section.

As RICO predicate acts, Plaintiffs allege that Defendant Castle committed mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and witness tampering and retaliation in violation of 18 U.S.C. §§ 1512 and 1513. (Pl. Am. Compl. ¶¶ 59-86, 111-140.)

a.   Mail and Wire Fraud

To state a claim for fraud as a RICO predicate, a plaintiff must allege that:

(1) [A] material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false

or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 648 (S.D. Tex. 2007) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). The Fifth Circuit has also held that while the fifth element, reliance upon the defendants' representations, "is not an element of statutory mail or wire fraud," it is required when violations of those statutes are alleged as RICO predicates. *MasterCard*, 313 F.3d 257, 263 (5th Cir. 2002). Further, when fraud is used as the predicate for a RICO allegation, the pleading requirements of Federal Rule of Civil Procedure 9(b) apply, requiring the plaintiff to "state with particularity the circumstances constituting fraud or mistake." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). The elements of a wire fraud claim under 18 U.S.C. § 1343 are the same as those for a mail fraud claim under § 1341, except that the use of the wire for wire fraud must be interstate. *Walsh v. America's Tele–Network Corp.*, 195 F. Supp. 2d 840, 846 (E.D. Tex. 2002).

Plaintiffs' complaint is limited to very general assertions, and therefore fails under the applicable pleading requirements. Plaintiffs claim that "Defendant Castle used the United States Postal Service in an attempt to extort monies from us," apparently in the form of attorney's fees in the underlying state claim. (Pl. Am. Compl. ¶ 11.) Plaintiffs fail to explain how Defendant Castle utilized the Postal Service to extort money. Plaintiffs further allege that Defendant Castle "used printed matter in the form of telephone books ads [sic] in order to carry out fraud on my wife and persons like us." (*Id.* ¶ 121.) Plaintiffs fail to explain what these printed ads stated beyond the fact that Dentist Choice "was a

dental service provider that was licensed and regulated by the state of Texas." (*Id.* ¶ 49.) From the face of the complaint, it appears that all information provided by the printed ads—that Dentist Choice provided dental services and was licensed to do so—was true information. There are thus insufficient facts to indicate mail fraud.

Plaintiffs further state that Defendants Castle and Dentist Choice have "a history and pattern of wire fraud as they have been running the fraudulent ads to further the enterprise known as Lovett Dental." (Pl. Am. Compl. ¶ 122.) Plaintiffs do not explain in what ways Defendants Castle and Dentist Choice actually engaged in the alleged wire fraud.

Ultimately, Plaintiffs present no plausible allegations that any of the Defendants had either intent to defraud, or reckless indifference as to the truth or falsity of their representations. *Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 648 (S.D. Tex. 2007). At a more basic level, though, Plaintiffs fail to plead facts to support an inference that the communications themselves were actually fraudulent or violated federal law. *Elliott v. Foufas*, 867 F.2d 877, 882 (5th Cir. 1989).

b.   Witness Tampering

Plaintiffs also allege violations of 18 U.S.C. § 1512 as a RICO predicate. Section 1512(a)(1) is violated when someone "kills or attempts to kill another person, with intent to" prevent that person from testifying or producing records in an official proceeding, or communicating information to law enforcement or a judge which relates to the commission of a federal offense. 18 U.S.C. § 1512(a)(1). Section 1512(a)(2) is violated when one "uses physical force or the threat of physical force" against someone with the

intent to "influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 15(a)(2).

Plaintiffs allege that Defendant Castle engaged in a number of acts to prevent Plaintiffs from pursuing their claims in court. Defendant Castle allegedly (1) knowingly intimidated or corruptly persuaded another person to "discredit, influence, delay, or prevent" the testimony of the Plaintiffs (Pl. Am. Compl. ¶ 127); (2) "corruptly persuaded a party to list [Mrs. Robinson's] collector vehicle as being 'stolen' in order to prevent her from pursuing this matter in court" (*Id.* ¶ 132); and (3) knowingly used the creation of a fraudulent restraining order to prevent the testimony of both Plaintiffs (*Id.* ¶ 136). Plaintiffs do not allege the use of force or threats of force in conjunction with the alleged witness tampering. Absent such allegations, there are no violations of 18 U.S.C. § 1512 which could serve as a predicate for the "pattern of racketeering" required under RICO.

Because Plaintiffs have not alleged a "pattern of racketeering activity," they have failed to state a claim under RICO for which relief can be granted.

### 2.   Second Amendment Violations

Plaintiffs allege violations of Mr. Robinson's Second Amendment rights based upon the impact the allegedly fraudulent TRO had on his ability to sell firearms and firearm-related apparatuses. Because the Second Amendment applies only to government action, *Presser v. Illinois*, 116 U.S. 252, 265 (1886); *McDonald v. City of Chicago, Ill.*, 561 U.S. ---, 130 S. Ct. 3020 (2010), Plaintiffs' claims against private parties under the Second Amendment fail to state a claim upon which relief can be granted.

### 3.   Conspiracy

Plaintiffs' conspiracy claim against Defendants Castle and Dentist Choice alleges that Defendant Castle worked in unison with the New Jersey Defendants to have Mr. Robinson arrested or to otherwise bar him from giving testimony in his medical malpractice suit. The complaint is unclear as to whether Plaintiffs intend this conspiracy claim to be related to the alleged RICO violations, or whether Plaintiffs intend to allege conspiracy as a separate, common law claim. (Pl. Am. Compl. ¶¶ 96-99.) If the conspiracy reference is meant to relate to Plaintiffs' RICO claims, then it fails for the reasons stated above.

Assuming that Plaintiffs intend to assert a civil conspiracy claim, a separate analysis must be conducted. A civil conspiracy is an agreement by two or more persons to accomplish an unlawful purpose. The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

Plaintiffs' complaint is deficient as to at least one of these elements. Plaintiffs do allege that there were two or more persons involved (Castle, Meckel, and the "Domestic Violence Team"). (Pl. Am. Compl. ¶ 96.) They also allege that there was an object to be accomplished—namely "the ultimate goal of having [Mr. Robinson] arrested…or in the least barring [him] from giving testimony in the medical malpractice case against Defendant[s] Castle, Freeman, and Ziegenbein." (Pl. Am. Compl. ¶ 96.)

With regard to the third element of conspiracy, a meeting of minds, Plaintiffs' complaint is devoid of facts, stating only that there was an "agreement" between Defendant Castle and the New Jersey Defendants (Pl. Am. Compl. ¶ 98), and that

Defendants were working "in unison." (*Id.* ¶ 96.) The complaint fails to indicate how the Defendants came to work together, or what the nature of their agreement was. The Plaintiffs' pleadings fare even worse as to the fourth element, an unlawful, overt act. Plaintiffs do not mention any unlawful acts that could serve as the basis for a finding of conspiracy as to Defendant Castle. The acts upon which Plaintiffs base their conspiracy claim relate to the generation of the TRO. However, there are no facts anywhere in the Amended Complaint (other than Plaintiffs' unsupported conclusions) to indicate that Defendant Castle was at all connected with the issuance of the restraining order, or that the restraining order was issued unlawfully. Because Plaintiffs have not plead sufficient facts to show that there was an unlawful, overt act in furtherance of the alleged conspiracy, Plaintiffs have failed to state a claim for civil conspiracy upon which relief can be granted.

### 4.  Medical Malpractice

It is not clear that Plaintiffs assert a claim for medical malpractice against Mr. Castle. If Plaintiffs did intend such a claim, it would fail under Rule 12(b)(6) for the same reasons described above with regard to the medical malpractice claims against Defendants Ziegenbein and Freeman.

### 5.  42 U.S.C. § 1983

The claim against Defendant Castle for violations of 42 U.S.C. § 1983 fails for the reasons stated above with regard to the § 1983 claims against Defendants Ziegenbein and Freeman.

Because Plaintiffs' Amended Complaint fails to state any claim against Defendants Castle and Dentist Choice on which relief can be granted, Defendants Castle and Dentist Choice's Motion to Dismiss must be GRANTED.

## V.     MOTION TO DECLARE PLAINTIFFS VEXATIOUS LITIGANTS

Defendants Ziegenbein and Freeman have filed a Motion to Declare Plaintiffs Vexatious Litigants. (Doc. No. 30.) This Motion is based upon the number of defendants joined in this suit (*Id.* at 1), and the "similar unwarranted lawsuits against Defendants in the past," (*Id.* at 2). Defendants assert that Plaintiffs have filed ten lawsuits in the past six years; those not currently pending have been dismissed or resolved in defendants' favor. (*Id.* at 4.) Declaring Plaintiffs vexatious litigants in order to prevent future filing is appropriate where those plaintiffs consistently abuse the court system and harass their opponents. *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-360 (5th Cir. 1986).

While the Court is sensitive to Defendants' concerns, Plaintiffs have not yet received a warning from this Court (nor from any other courts of which the Court is aware) that would have alerted them to the possibility that they might be declared vexatious litigants. Because these litigants are *pro se* and lack legal experience and expertise, this Court believes that more warning is warranted before designating Plaintiffs vexatious litigants. That said, the Court conveys its most serious concern as to Plaintiffs' use of this forum to redress their grievances against these Defendants. The Plaintiffs are hereby on notice that frivolous claims filed with the Southern District of Texas in the future are likely to lead to a designation of Plaintiffs as vexatious litigants.

## VI.     CONCLUSION

The New Jersey Defendants' Motion to Dismiss (Doc. No. 35) is **GRANTED**.

Defendants Ziegenbein and Freeman's Motion to Dismiss (Doc. No. 61) is **GRANTED**.

Defendants Castle and Dentist Choice's Motion to Dismiss (Doc. No. 62) is **GRANTED**.

Plaintiffs' Motions for Partial Summary Judgment (Doc. Nos. 54 and 57) are **DENIED** as

moot. Defendants Ziegenbein and Freeman's Motion to Declare Plaintiffs Vexatious

Litigants (Doc. No. 30) is **DENIED**.

For all the reasons stated above, Plaintiffs' Amended Complaint is **DISMISSED**

**WITH PREJUDICE.**

**IT IS SO ORDERED**.

**SIGNED** this 29th day of August, 2011.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE